UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 6:06-cv-1683-ORL--22UAM

ALEA LONDON, LIMITED,

        Plaintiff,

vs.

SEA GARDEN HOSPITALITY
MANAGEMENT, INC. a/k/a SEA GARDEN
INN MANAGEMENT, INC.,
LOUIS BROWN, ELIZABETH BROWN,
NORMA E. BROWN, BOBBIE D. BROWN,
ANITA  COMEAU, JACQUES LONGTIN,
BRAY & GILLESPIE III MANAGEMENT,
LLC, OCEAN RESORTS, OCEAN WATERS,
LLC and BRAY & GILLESPIE, INC.,

        Defendants.

_____/

## PLAINTIFF, ALEA LONDON, LIMITED'S, MOTION
## FOR SUMMARY JUDGMENT

      The Plaintiff, ALEA LONDON, LIMITED (hereinafter "ALEA") by and through

undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and the Local Rules

for the Middle District of Florida, hereby moves for Summary Judgment, against the

Defendants, SEA GARDEN HOSPITALITY MANAGEMENT, INC. a/k/a SEA GARDEN

INN MANAGEMENT, INC. (hereinafter "SEA GARDEN"),    LOUIS BROWN,

ELIZABETH BROWN, NORMA E. BROWN, BOBBIE D. BROWN, ANITA COMEAU,

JACQUES LONGTIN, BRAY & GILLESPIE III MANAGEMENT, LLC, OCEAN

RESORTS, OCEAN WATERS, LLC and BRAY & GILLESPIE, INC. (collectively

hereinafter "DEFENDANTS") and in support thereof states the following:

## I. INTRODUCTION

This Motion for Summary Judgment arises out of a declaratory judgment action brought by ALEA. ALEA filed its Amended Petition for Declaratory Relief in order to have this Honorable Court declare that certain insurance policy exclusions act to negate ALEA's duty to defend and indemnify its insured, SEA GARDEN, in the underlying actions filed by Plaintiffs, LOUIS BROWN, ELIZABETH BROWN, NORMA E. BROWN, BOBBIE D. BROWN, ANITA COMEAU, and JACQUES LONGTIN. The Amended Petition for Declaratory Relief named all parties involved in the underlying actions. In addition to naming SEA GARDEN as a Defendant, ALEA also named BRAY & GILLESPIE, III MANAGEMENT, LLC, OCEAN RESORTS, OCEAN WATERS, LLC, and BRAY & GILLESPIE, INC. (collectively hereinafter "BRAY & GILLESPIE"), subsequent purchaser of the hotel where the alleged incident occurred.

## II. UNDISPUTED FACTS

1.     ALEA issued a Commercial General Liability Policy to SEA GARDEN for the business property located at 3161 South Atlantic Avenue, Daytona Beach, Florida ("hotel"), Policy number BU05020 ("the Policy") for the policy period of December 27, 2004 through December 27, 2005. (See Policy, attached as Exhibit "A").

2.     The liability insuring agreement of the Policy provides:

"We will pay those sums that the insured be-comes legally obligated to pay as damages be-cause of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply."

2

(See Policy, attached as Exhibit "A"; ALEA 01 Endorsement n) Amendment of

Insuring Agreement –Known Injury or Damage CG 09/99, page 4 of 7).

       3.     The Policy contains an Absolute Pollution Exclusion which states the

following:

### d) Absolute Pollution Exclusion Endorsement

Under 2., Exclusions, f. Pollution, Commercial General Liability Coverage Form, Section I. – Coverages, Pollution/environmental impairment/contamination is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of same. All liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity is excluded throughout this policy. All wording is replaced by the following:

    (A)    "Bodily Injury," "Personal Injury," "Property Damage," or Damages for the devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense; or

    (B)    Any loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order, governmental authority or directive or that of any private party or citizen action that any Insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess same the effects of pollutants, environmental impairments, contaminants or (2) any litigation or administrative procedure in which any Insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or placement of pollutants, environmental impairments, contaminants into or upon land, premises, buildings, the atmosphere, any water course, body water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

(See the Policy, attached as Exhibit "A").

       4.     The Policy contains an Absorption/Inhalation/Disease Exclusion, which states

the following:

### s)   Absorption/Inhalation/Disease Exclusion

This insurance does not apply to "bodily injury", "personal injury", "advertising injury", disease or illness including death resulting from such disease or illness, alleged disease or illness, property damage, or any other damages, for past, present, or future claims arising in whole or in part, directly or indirectly out of:

1)   Any form of inhalation or absorption; or

2)   Acquired immunodeficiency Syndrome or Human Immunodeficiency Virus, or exposure to another having same, or to substances or materials contaminated with same; or

3)   Fear of contracting Acquired Immunodeficiency Syndrome or Human Immunodeficiency Virus; or

4)   Any sexually transmitted disease; or

5)   Any form of communicable disease.

This applies whether damages result from an insured's act or failure to act, as well as allegations of an insured's act or failure to act in:

1)   Hiring, training or supervising any person or controlling, monitoring or supervising the care of any person in the custody of any insured; or

2)   Testing, screening, segregating or obtaining medical treatment for any person in the custody of any insured; or

3)   Disposing of contaminating substances or materials.

(See the Policy, attached as Exhibit "A").

5.   The Policy contains a Seepage and/or Pollution and/or Contamination Exclusion, which states the following:

### SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or withing any other Endorsement which forms this Policy), this Policy does not insure:

(a)   any loss, damage, cost or expense, or

(B)   any increase in insured loss, damage, cost or expense, or

(C)   any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat

4

thereof, (and whether or not as a result of public or private litigation), which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this Endorsement includes (but is not limited to):

(a)     seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Municipal or other law, ordinances or regulations; and

(b)     the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

(See the Policy, attached as Exhibit "A").

6.     The Policy contains the definition of "pollutant" and defines it to "mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (See The Policy, attached as Exhibit "A", Commercial General Liability Coverage Form—Section V—Definitions, page 15 of 16).

7.     SEA GARDEN has been sued by Defendants, LOUIS BROWN, ELIZABETH BROWN, NORMA E. BROWN, BOBBIE D. BROWN, ANITA COMEAU, and JACQUES LONGTIN, in three (3) separate lawsuits, and has made a claim for coverage under the liability portion of the Policy, demanding that ALEA provide a defense and indemnity as to all claims made against it in the three Amended Complaints filed by the respective

5

Defendants. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

8.    On or about December 16, 2005, SEA GARDEN sold the hotel to BRAY & GILLESPIE, which entities have also been sued in the aforesaid three (3) lawsuits. (See Alea's Request for Admissions and Sea Garden's Responses to Plaintiff's Request for Admissions, attached as Composite Exhibit "C").

9.    In the legal action filed by Louis Brown and Elizabeth Brown styled *Louis Brown and Elizabeth Brown v. Bray & Gillespie III Management, LLC, Ocean Resorts, Ocean Waters, LLC, Sea Garden Hospitality Management, Inc., and Bray & Gillespie, Inc.,* U.S. District Court, Middle District, Case Number CIV6:06-cv-661-ORL-22JGG, LOUIS BROWN and ELIZABETH BROWN claim damages for exposure to Legionella and contracting Legionnaires' Disease while as invitees and paying guests of the hotel. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

10.    In the underlying action, Plaintiffs, Louis Brown and Elizabeth Brown, contend that Louis Brown was exposed to Legionnella and contracted Legionnaires' Disease due to Defendants' negligence. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

11.    Louis Brown and Elizabeth Brown contend that Defendants breached their contract with Plaintiff, Louis Brown in that Defendants did not provide a reasonably safe premise because Plaintiff contracted Legionnaires' Disease while a guest of the defendant hotel. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as

6

Alea's Exhibit "B").

12.     Louis Brown and Elizabeth Brown contend that "Defendants were aware of the presence of Legionnella in their systems and that its presence could cause a serious, debilitating and sometimes fatal consequence known as Legionnaires' Disease." (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

13.     Louis Brown first began experiencing symptoms of his illness on January 6, 2006. (See deposition of Louis Brown, dated February 2, 2007, page 44, lines 12-14 attached as Exhibit "D")

14.     In the legal action filed by Anita Comeau and Jacques Longtin, styled *Anita Comeau and Jacques Longtin, H/W v. Bray & Gillespie III Management, LLC, Ocean Resorts, Ocean Waters, LLC, Sea Garden Hospitality Management, Inc., and Bray & Gillespie, Inc,* U.S. District Court, Middle District, Case Number CIV6:06-cv-891-ORL-18JGG, ANITA COMEAU and JACQUES LONGTIN claim damages for exposure to Legionella and contracting Legionnaires' Disease while as invitees and paying guests of the hotel. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

15.     In the underlying action, Plaintiffs, Anita Comeau and Jacques Longtin, contend that Anita Comeau was exposed to Legionnella and contracted Legionnaires' Disease due to Defendants' negligence. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

16.     Anita Comeau and Jacques Longtin contend that Defendants breached their

7

contract with Plaintiff, Anita Comeau, in that Defendants did not provide a reasonably safe premise and Plaintiff contracted Legionnaires' Disease while a guest of the defendant hotel. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

17.     Anita Comeau and Jacques Longtin contend that "Defendants were aware of the presence of Legionnella in their systems and that its presence could cause a serious, debilitating and sometimes fatal consequence known as Legionnaires' Disease." (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

18.     Anita Comeau first began experiencing symptoms of her illness on January 7, 2006. (See Deposition of Anita Comeau, dated February 6, 2007, page 102, line 1, attached as Exhibit "E").

19.     In the legal action filed by Norma E. Brown and Bobbie D. Brown, styled *Norma E. Brown and Bobbie D. Brown v. Bray & Gillespie III Management, LLC, Ocean Resorts, Ocean Waters, LLC, Sea Garden Hospitality Management, Inc., and Bray & Gillespie, Inc.*, U.S. District Court, Middle District, Case Number CIV6:06-cv-660-ORL-22JGG, NORMA E. BROWN and BOBBIE D. BROWN claim damages for exposure to Legionella and contracting Legionnaires' Disease while as invitees and paying guests of the hotel. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

20.     In the underlying action, Plaintiffs, Norma E. Brown and Bobbie D. Brown, contend that Norma E. Brown was exposed to Legionella and contracted Legionnaires'

8

Disease due to Defendants' negligence. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

21.     Norma E. Brown and Bobbie D. Brown contend that Defendants breached their contract with Plaintiff, Norma E. Brown in that Defendants did not provide a reasonably safe premise because Plaintiff contracted Legionnaires' Disease while a guest of the defendant hotel. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

22.     Norma E. Brown and Bobbie D. Brown contend that "Defendants were aware of the presence of Legionnella in their systems and that its presence could cause a serious, debilitating and sometimes fatal consequence known as Legionnaires' Disease." (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

23.     Norma E. Brown first began experiencing symptoms of her illness on January 5, 2006. (See Deposition of Norma E. Brown, dated February 5, 2007, page 116, lines 19-21, attached as Exhibit "F").

24.     The Florida Department of Health issued a report titled Outbreak of Legionnaires' Disease in a Hotel in Volusia County, Florida. (See Affidavit of Dr. Larry Marc Bush, attached as Alea's Exhibit "G").

25.     In the report, the Department of Health indicated that "although no environmental or clinical specimens could be isolated, epidemiological data indicated that the source of the outbreak was the hotel." (See Affidavit of Dr. Larry Marc Bush, attached as Alea's Exhibit "G").

9

26.     Further, the report also stated that "Exposure to the indoor spa included bathing in the spa water, and staying in the enclosed spa area long enough to inhale aerosolized water droplets produced from operating spa jets." (See Affidavit of Dr. Larry Marc Bush, attached as Alea's Exhibit "G").

## III. MEMORANDUM OF LAW

### A.     The Legal Standard for Summary Judgment

Summary Judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  The moving party bears the initial burden of showing the Court that there is no genuine issue of material fact that should be decided at trial. *The Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A moving party discharges its burden by showing the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. The moving party must show by depositions, affidavits, answers to interrogatories, and admissions on file, that specific facts show that there is no genuine issue for trial. *Id.* at 324. The nonmoving party cannot defeat summary judgment unless specific facts are provided, showing that a genuine issue of material fact exists upon which a jury might return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Summary Judgment is appropriate where material facts are not in dispute and judgment is based on legal construction of documents. *Ball v. Florida Podiatrist Trust,* 620 So.2d 1018, 1022 (Fla. 1st DCA 1993). The *Ball* Court stated that "it is well settled that where a determination of liability depends upon a written instrument and its legal effect, the

10

question is essentially one of law and is ordinarily determinable by the entry of summary judgment." *Id.* The *Ball* Court also explained that "the issue before us is simply a matter of law as to the construction of the contractual agreement between the parties..." *Id. See also Hartman Services, Inc. v. Southeast First Nat. Bank,* 399 So.2d 404 (Fla. 3d DCA 1981) (Holding that the construction of the contract was a question of law, and it was within the province of the trial judge to construe same on a motion for summary judgment, without receipt of evidence as to the meaning of the provisions quoted in a footnote).

The pleadings, depositions, admissions on file, together with affidavits, show that there are no genuine issues of material fact and that Alea is entitled to judgment, as a matter of law.

**B.     The Policy Language Is Clear and Unambiguous.**

Insurance contracts are subject to the same rules of construction and interpretation that apply to all written contracts. Insurance contracts are construed in accordance with the plain language of the policy, as bargained for by the parties. *Auto-Owners Ins. Co. v. Anderson,* 756 So.2d 29 (Fla. 2000). "Under the *Erie* doctrine, a federal court adjudicating state law claims applies the substantive law of the state," thereby "the construction of insurance contracts is governed by substantive state law." *Sphinx Int'l, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 412 F.3d 1224, 1227 (11th Cir. 2005). In this matter, the Court evaluates the insurance contract under Florida law.

"The law in Florida is that the interpretation of a contract is a matter of law and not a matter of fact to be resolved by a jury..." *DEC Elec., Inc. v. Raphael Constr. Corp.,* 558 So.2d 427, 428 (Fla. 1990). Like other contracts, insurance contracts will be accorded their

11

plain and ordinary meaning. *Nova Casualty Company v Waserstein*, 424 So.2d 1325, 1332 (S.D.Fla. 2006). Where a policy defines a term, the court will give the term its agreed-upon meaning. Interpretation of Policy, Generally, *Williston on Contracts*, §49:14. "The resolution of a dispute involving an insurance policy begins with a review of the plain language of the insurance policy as bargained for by the parties." *Koikos v. Travelers Ins. Co.*, 849 So.2d 263, 266 (Fla. 2003). While ambiguities are generally construed against the insurer, Florida law cautions that courts must not add meaning to clear and unambiguous terms of insurance policies and create ambiguity where none existed. *Ajax Building Corp. v. Hartford Fire Ins. Co.*, 358 F.3d 795, 799 (11th Cir. 2004). To determine whether a term is ambiguous or not, Florida courts have consulted such sources as dictionaries to determine the meaning of a word. *Great American Ins. v. Souza*, 855 So.2d 187 (Fla. 4th DCA 2003). A court is prohibited from resorting to complex rules of construction to determine coverage or the applicability of exclusions when the policy language is clear and unambiguous. *Id.* In contrast, the fact that policy language requires some interpretation does not necessarily mean it is ambiguous.

The exclusionary provisions contained in the policy issued by Alea to Sea Garden, are clear and unambiguous. As such, the insurance contract must be accorded its plain and ordinary meaning thereby excluding coverage for all claims made by the Plaintiffs in the underlying matters.

**C.     The Absolute Pollution Exclusion Provision Applies, Therefore Alea Has No Duty To Defend And Indemnify Its Insured, Sea Garden, In The Underlying Actions.**

"The duty to defend solely depends on the fact and legal theory alleged in the

12

pleadings and claims against the insured." *Nova* 424 So.2d at 1332. When a complaint alleges multiple grounds for liability, at least one claim must be within the insurance coverage if the insured is to be obligated to defend the entire suit. *Id.*

The Amended Complaints in the underlying matters allege that the Plaintiffs were exposed to Legionella bacteria and that the Defendants breached their contract with the Plaintiffs by not providing a reasonably safe premise, resulting in the Plaintiffs contracting Legionnaires' Disease while paying guests of the hotel. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B").

In addition, each underlying Amended Complaint also alleges the loss of consortium arising out of the Plaintiffs' exposure to the Legionella bacteria. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B"; and Excerpts of Depositions of Bobbie Brown, dated February 5, 2007, pgs. 52-53, lines 19-7, Jacques Longtin, dated February 6, 2007, pgs. 52-53, lines 19-12, Louis Brown, dated February 2, 2007, pgs. 67-68, lines 8-9, attached collectively as Exhibit "H").

The underlying Amended Complaints leave no doubt that Alea has **no** duty to defend and indemnify its insured, Sea Garden. It is indisputable that these claims are excluded from coverage. The Insuring Agreement provision provides that Alea will defend the insured and pay for damages to which the insurance applies. If it is determined that insurance does not apply then Alea has no duty to defend or indemnify the insured.

Alea issued a General Commercial Liability Policy to Sea Garden (See Undisputed Facts, ¶ 1). The policy has an exclusionary provision titled "Absolute Pollution Exclusion." This provision, as set forth in Undisputed Facts, excludes coverage for claims arising out of

13

or related to any form of pollution as a result of alleged or threatened discharge, seepage, migration, release, escape or placement of pollutants, environmental impairments, contaminants into or upon land, premises, buildings, the atmosphere, any water course, body water, aquifer or ground water.

Florida courts have recently extended the definition of "pollutant" to include bacteria. In *Nova*, the Court determined that the pollution exclusion clause applied to any claims alleging that the building owner, Mr. Waserstein, negligently exposed the tenants' employees to "living organisms, microbial populations, airborne and microbial contaminants, and indoor allergens, and thus, the insurer had no duty to defend." *Id.* The employees brought suit against Mr. Waserstein alleging that his negligence resulted in their exposure to living organisms, microbial populations, airborne and microbial contaminants, and indoor allergens. Mr. Waserstein argued that the policy limited the terms of "contaminant" and "irritant" to such items that were solids, liquids, gaseous or thermal. Water-borne bacteria, even if they were determined to be irritants or contaminants, did not fit into any of these categories. The court in *Nova* rejected this argument, stating that the "dictionary definition of solid does not preclude living or organic things from being described as solid." *Id.* at 1335.

*Nova* relied on *Deni Assoc. v. State Farm & Cas.*, 711 So.2d 1135 (Fla. 1998) when it stated that where the policy defines pollutant as an "irritant" or "contaminant", the court should look to see if the disputed substance is alleged to have had a *particular effect* commonly thought of as "irritation" or "contamination." *Nova*, 424 So.2d at 1334. In other words, a substance is not determined to be a pollutant by its use, but rather by its effect. *Id.*

14

Likewise, the policy issued to Sea Garden defines "pollutant" as an "irritant" or "contaminant." In fact, the language of the policy's definition of "pollutant" is identical to *Nova*'s policy definition. The policy in the instant matter defines "pollutant" in the following manner:

15.     **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

\*\*\*

When determining whether something constitutes a "pollutant", the Court should determine whether it fits the policy's definition of "pollutant", as the definition is understood in the plain, ordinary language. *Nova* 424 So.2d at *1333*. The Legionella bacteria has a particular effect that requires it to be defined as a "pollutant", and the policy's definition of a "pollutant" includes any solid, liquid, gaseous or thermal irritant or contaminant.

Due to its effect, bacteria are considered an irritant or contaminant. Therefore, like the substance in *Nova,* bacteria, the Legionella bacteria should be considered an "irritant" or "contaminant." Accordingly, this Court should find that the policy issued by Alea excludes coverage for claims arising from pollutants such as the Legionella bacteria.

In *Landshire Fast Foods v. Employers Mutual Casualty Company*, 269 Wis. 2D 775 (Wis. 2004), the Wisconsin Supreme Court held that losses caused by bacteria were excluded from coverage when the policy contained a pollution exclusionary clause. The Court found that the pollution exclusion did not exclude living organisms from its definition. In fact, it held that the term "contaminant" within the policy's definition of "pollutant" incorporated

15

bacteria. The Court in *Nova* also found that *Landshire* was consistent with Florida's principle of insurance contract interpretation that plain meaning governs first and foremost. *Nova* 424 So.2d at 1334. The definition of pollutant in both *Nova* and *Landshire* is identical to the definition of pollutant in the policy issued by Alea to Sea Garden.

In the instant matter, all Plaintiffs in the underlying three (3) matters allege negligence, breach of contract and loss of consortium as a result of being exposed to the Legionella bacteria and allegedly contracting Legionnaires' Disease. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B"). Legionnaires' Disease is caused by the Legionella bacteria. (See Affidavit of Dr. Larry Marc Bush, attached as Exhibit "G"). The Legionella bacteria, when it infects a person, creates a particular effect that would be commonly thought of as contamination. (See Affidavit of Dr. Larry Marc Bush, attached as Exhibit "G"). In *Landshire,* the Court focused on the fact that the substance at issue, bacteria, fell within the ordinary definition of contaminant, and had an effect commonly referred to as "contamination". *Nova* 424 So.2d at 1334. In the instant matter, the substance at issue, Legionella bacterium, also falls within the ordinary definition of a "contaminant" and has an effect that can be commonly referred to as contamination. Despite the claims of the underlying Amended Complaints being cloaked in allegations of breach of contract, negligence and loss of consortium, all claims arise from the exposure to Legionella bacteria and the contracting of Legionnaires' Disease. As such, coverage under the applicable policy is excluded for such claims.

As in *Nova*, *Deni* and *Landshire*, this Honorable Court should find that all such claims arising out of the exposure to Legionella and the contracting of Legionnaires' Disease

16

are excluded from coverage under the Absolute Pollution Exclusion provision of the policy.

As such, Alea has no duty to defend and indemnify Sea Garden for such claims.

## D.    The Absorption/Inhalation/ Disease Exclusion Applies, Therefore Alea Has No Duty To Defend And Indemnify Its Insured, Sea Garden, In The Underlying Actions.

Legionnaires' Disease is a disease that is transmitted via aerosolized water when people inhale the droplets containing Legionella bacterium. (See Affidavit of Dr. Larry Marc Bush, attached as Alea's Exhibit "G").

In the instant matter, Alea issued a General Commercial Liability Policy to Sea Garden (See Undisputed Facts). The policy contains an Absorption/Inhalation/Disease Exclusion. This provision is set forth above and excludes coverage for damages and claims arising from any form of inhalation or absorption.

Under Florida law, insurance policies are to be accorded their plain and ordinary meaning. A Court is prohibited from utilizing complex rules of construction to determine the applicability of exclusionary provisions where the language is clear and unambiguous. *Souza* 855 So.2d. at 187. The exclusionary provision in the policy issued by Alea to Sea Garden is clear and unambiguous, thereby requiring that it be accorded its plain and ordinary meaning when being interpreted.

The three (3) Amended Complaints in the underlying matter, allege claims arising from Legionella and the contraction of Legionnaires' Disease. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B"). Because Legionnaires' Disease is transmitted via inhalation, it is excluded from coverage under the policy. In addition, the claims for Loss of Consortium also arise from the claims of exposure

17

to Legionella and the contraction of Legionnaires' Disease (See Excerpts of Depositions of Bobbie Brown, dated February 5, 2007, pgs. 52-53, lines19-7, Jacques Longtin, dated February 6, 2007, pgs. 52-53, lines 19-12, Louis Brown, dated February 2, 2007, pgs. 67-68, lines 8-9, collectively attached as Exhibit "H"), thereby excluding coverage once again, under the Absorption/Inhalation/Disease Exclusion. All alleged claims made by the underlying Plaintiffs arise from their contention that they contracted a disease (Legionnaires' Disease) that is transmitted through inhalation.

The exclusion of coverage applies whether the damage results from the insured's act or failure to act as well as allegations of the insured's act or failure to act in the hiring, training or supervising of any person; or controlling, monitoring or supervising the care of any person in the custody of any insured; or testing, screening, segregating or obtaining medical treatment for any person in the custody of the insured; or disposing of contaminating substances or materials.

No matter how the Defendants in this matter attempt to cloak the allegations, the exclusionary language is clear in its preclusion of coverage for claims resulting from any form of disease or illness arising from inhalation or absorption. Because all alleged claims in the Amended Complaints arise from a disease or illness (Legionnaires' Disease) arising out of any form of inhalation or absorption, all of these alleged claims are excluded from coverage. Therefore, Alea does not have the duty to defend nor indemnify its insured, Sea Garden against such claims.

**E.      The Seepage And/Or Pollution And/Or Contamination Exclusion Applies, Therefore Alea Has No Duty To Defend And Indemnify Its Insured, Sea Garden, In The Underlying Actions.**

The policy issued by Alea to Sea Garden explicitly states that it does not insure for any loss or damage arising from any kind of seepage or any kind of pollution and/or contamination. The Seepage and/or Pollution and/or Contamination exclusionary provision is set forth above in Undisputed Facts.

Legionella is toxic, dangerous, hazardous, and/or deleterious to persons or the environment. (See Affidavit of Dr. Larry Marc Bush, attached as Exhibit "G"). The presence, existence or release of the Legionella bacteria endangers or threatens to endanger the health, safety or welfare of persons or the environment. (See Affidavit of Dr. Larry Marc Bush's Affidavit, attached as Exhibit "G").

All Plaintiffs in the underlying matters allege that they became ill, suffering the deleterious effects of the bacteria, due to the negligence of the Defendants. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B"). It is their contention that Legionella threatened and endangered their health. Under the exclusionary provision of the policy, coverage is excluded for any kind of seepage or any kind of pollution and/or contamination. The provision clearly states that this includes, but is not limited to the presence, existence, or release of anything which endangers or threatens the health, safety or welfare of persons or the environment.

As previously discussed, the Court in *Nova* determined that bacteria is a contaminant because of the particular effect it can have on a person. The policy definition of "pollutant" includes substances that are "contaminants." As such, the Legionella bacteria is a pollutant

19

and/or contaminant.   The policy of insurance does not apply to pollutants and/or contaminants, therefore, Alea has no duty to defend and indemnify its insured for such claims as those made in the Amended Complaints.

F.     **The Policy Is Considered Invalid Because Sea Garden Had No Insurable Interest In Hotel At The Time of The Occurrence.**

Alea issued a General Commercial Liability Policy to Sea Garden for the policy period of December 27, 2004, through December 27, 2005. (See the Policy, attached as Exhibit "A").   The ownership of the hotel was transferred from Sea Garden to Bray & Gillespie, LLC on December 16, 2005, in fee simple (See Alea's Request for Admissions and Sea Garden's Responses to Plaintiff's Request for Admissions, attached as Composite Exhibit "C").

Fla. Statute 627.405 addresses the issue of an insurable interest with regard to property.  The statute states:

> (1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
>
> (2) "Insurable Interest" as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.
>
> (3) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof.

"The public policy of this state renders an insurance policy invalid when the insured has no insurable interest in the property or the risk insured on the grounds that same constitutes a wagering contract." *Aetna Ins. Co. v King*, 625 So.2d 716, 718 (Fla. 1st DCA

20

1972). Under Florida law, an insurable interest is not determined by title, but by whether the insured has a substantial economic interest in the property. *Id.* Furthermore, if an interest is extinguished prior to the loss, as by an absolute transfer of property, then recovery is prevented under the contract for the loss. *Peninsular Fire Ins. Co. v. Fowler*, 166 So.2d 206 (Fla. 2d DCA 1964). According to Florida Statute 627.405, Sea Garden does not have an insurable interest in the hotel because ownership was transferred to Bray & Gillespie, LLC on December 16, 2005. (See Alea's Request for Admissions and Sea Garden's Responses to Plaintiff's Request for Admissions, attached as Composite Exhibit "C"). In the instant matter, the policy period of the insured runs through December 27, 2005. However, the policy is rendered invalid as of the date of sale, December 16, 2005, because Sea Garden no longer maintained an insurable interest in the hotel. Sea Garden had no substantial economic interest in the hotel after it was sold to Bray & Gillespie. In fact, according to the Warranty Deed, as attached to Alea's Request for Admissions to Sea Garden, the property was transferred in fee simple to Bray & Gillespie. (See Alea's Request for Admissions and Sea Garden's Responses to Plaintiff's Request for Admissions, attached as Composite Exhibit "C").

Each underlying Amended Complaint alleges exposure to Legionella, resulting in the contracting of Legionnaires' Disease. (See Amended Petition for Declaratory Relief, Composite Exhibit "B", attached as Alea's Exhibit "B"). Legionnaires' Disease has an incubation period of four (4) to ten (10) days, meaning that the symptoms of Legionnaires' Disease are first experienced between four (4) to ten (10) days after the exposure to the Legionella bacteria (Affidavit of Dr. Larry Marc Bush, attached as Exhibit "G").

21

Defendant herein, Norma E. Brown, first experienced symptoms on January 5, 2006. (See Deposition of Norma E. Brown, dated February 5, 2007, page 116, lines 19-21, attached as Exhibit "F"). Since Legionnaires' Disease has an incubation period of four (4) to ten (10) days, Defendant, Norma E. Brown, was exposed to the Legionella bacteria between December 26, 2005 and January 1, 2006. Sea Garden's insurable interest in the property ended on December 16, 2005, ten (10) days prior to Defendant's exposure.

Defendant herein, Anita Comeau, first experienced symptoms of Legionnaires' Disease on January 7, 2006 (See Deposition of Anita Comeau, dated February 6, 2007, page 102, line 1, attached as Exhibit "E"). Therefore, Anita Comeau was exposed to Legionella between December 28, 2005, and January 3, 2006. Sea Garden's insurable interest ended on December 16, 2005, twelve (12) days prior to exposure.

Defendant herein, Louis Brown, first experienced symptoms of Legionnaires' Disease on January 6, 2006. (See deposition of Louis Brown, dated February 2, 2007, page 44, lines 12-14 attached as Exhibit "D"). Louis Brown was first exposed to the Legionella bacteria between December 27, 2005, and January 2, 2006, eleven (11) days after Sea Garden's insurable interest in the hotel ended.

Without an insurable interest in the hotel after December 16, 2005, the policy issued by Alea to Sea Garden becomes invalid. As such, Alea has no duty to defend and indemnify Sea Garden for any claims made against it in the underlying matters because Sea Garden had no insurable interest in the property after its sale to Bray & Gillespie.

## G. Conclusion

The policy language is clear and unambiguous in its intent to exclude from coverage

22

any claims arising from or relating to pollution, contaminants and inhalation diseases. Since the three (3) underlying Amended Complaints allege claims that arise from the exposure to Legionella and the contracting of Legionnaires' Disease, all of the exclusionary provisions are applicable and Alea has **no** duty to defend and indemnify its insured against these claims.

Furthermore, even if the exclusionary provisions were not applicable, the insured, Sea Garden did not have an insurable interest at the time of the occurrence. The policy was not valid once the hotel was sold. All Plaintiffs in the underlying matters were exposed to Legionella after the hotel was sold, therefore Alea has no duty to defend and indemnify its insured, Sea Garden.

WHEREFORE, the Plaintiff, ALEA LONDON, LIMITED respectfully requests that this Court find that ALEA is entitled, as a matter of law, to an Order in its favor, granting Summary Judgment.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on the $\underline{\text{ } /\text{ } /^{th}}$ day of July, 2007, we electronically filed the foregoing with the Clerk of Court by using the CM/ECF system that will send a Notice of Electronic Filing to: Troy B. Froderman, Esquire, Bryan Cave LLP, Two North Central Avenue, Suite 2200, Phoenix, AZ 85004-4406; Anthony W. Merrill, Esquire, Bryan Cave LLP, Two North Central Avenue, Suite 2200, Phoenix, AZ 85004-4406; Robert Reder, Esquire, Bryan Cave, LLP, Two North Central Avenue, Suite 2200, Phoenix, AZ 85004; John Patrick O'Flanagan, Esquire, Fowler, White, Boggs & Banker, PA, 501 E. Kennedy Blvd., Suite 1700 PO Box 1438, Tampa, FL 33601-1438; F. Bradley Hassell, Esquire, Hassell Moorhead & Carroll, 149 S. Ridgewood Avenue, Suite 301 P.O. Box 2229, Daytona

23

Beach, FL 32115-2229; Mark A. Matovina, Esquire, Bogin, Munns, & Munns, 687 Beville

Road, Suite A, South Daytona, FL 32119; Jules Zacher, Esquire, Jules Zacher, PC, 1601

Walnut St., Suite 707, Philadelphia, PA 19102 and Ashleigh J. Smith, Hassell, Moorhead &

Carroll, P.O. Box 2229, Daytona Beach, FL 32115-2229.

BY: s/ Robin B. Rothman
ROBIN B. ROTHMAN, ESQUIRE
Florida Bar No.: 656460
POWERS, MCNALIS, TORRES &
TEEBAGY
P.O. Box 21289
West Palm Beach, FL 33416-1289
(561) 588-3000 Telephone
(561) 588-3705 Facsimile
Attorney for Plaintiff, ALEA
rrothman@powersmcnalis.com

LLOYDS-8994/147

24